IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Albright, John Brewer, Bobby Frisco, James Houstons, Marvin Poole, Paul Stadterman, Robert Todd, and Lynnette Williams | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 4-609 |
| Viacom, Inc., successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

AMBROSE, District Judge

# OPINION
# and
# ORDER OF COURT[1]

It is undisputed that the Plaintiffs have failed to file a timely charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). Absent an applicable tolling doctrine, Defendant CBS is entitled to the entry of summary judgment on the Plaintiffs' claims. The Plaintiffs seek to avoid this outcome by invoking the equitable tolling doctrine.

As the party seeking to utilize the doctrine, the Plaintiffs bear the burden of demonstrating that the equitable tolling doctrine is applicable here. See

---

[1] Counsel and the parties are well-versed in the procedural and factual history of this litigation. For purposes of brevity, I will omit setting forth these details in this Opinion.

1

Courtney v. LaSalle Univ., 124 F.3d 499, 505 (3d Cir. 1997) and Rupert v. PPG Industries, Inc., Civ. No. 7-705, 2009 WL 596014 at * 2 (W.D. Pa. Feb. 26, 2009). Specifically, the Plaintiffs must establish both that:

> (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge; and
>
> (2) this deception *caused* the plaintiff's non-compliance with the limitations provision.

Ruehl v. Viacom, 500 F.3d 375, 384 (3d Cir. 2007), *quoting*, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). CBS challenges the sufficiency of the Plaintiffs' proof with respect to both elements. After careful review and much reflection, I agree with CBS that the grant of summary judgment is warranted. The Plaintiffs have not met their burden of proof in demonstrating that CBS "actively misled" them.[2]

In essence, the Plaintiffs' entire argument rests on nothing other than CBS's failure to tender the data it compiled as required by the OWBPA, 29 U.S.C. § 626. The Plaintiffs seem to believe that under the Third Circuit court's ruling in Ruehl v. Viacom, 500 F.3d 375 (3d Cir. 2007), this simple omission is enough to establish equitable tolling. I read the Ruehl decision another way. Certainly the court rejected the Defendant's contention that an omission - the failure to provide statutorily required OWBPA data - could never be enough to constitute "active misleading," but neither did it hold the inverse to be true. See Ruehl, 500

---

[2] Given my finding in this regard, I need not consider CBS's other arguments in support of summary judgment.

F.3d at 385 n. 12. The court merely said that "material omissions" - i.e., the lack of OWBPA data - is relevant to the inquiry of whether a defendant actively misled a plaintiff. Indeed, though set forth in dicta, the court suggests that more than a mere omission is required to give rise to an inference that an employer intended to actively mislead an employee. Id., at 384 (stating that, "[b]ut even assuming we agree with Ruehl that, *depending on what the disclosures reveal*, a jury could infer that Viacom actively misled him as *'part of an intentional plan to hide vital information from its employees,'* Ruehl's diligence is also in issue.") (italics added, citations omitted). A court must consider the import of the omitted material. Though the Ruehl court does not go so far as to say so, one could infer that if the omitted material would have provided the employee with vital information as to the discriminatory nature of his discharge, then the failure to provide such information fairly may be understood by a jury to constitute an attempt to actively mislead an employee. In the same vein, however, if the omitted OWBPA data would have belied the existence of age discrimination, the failure to tender such documentation hardly can be understood as an attempt to lull an employee into foregoing a prompt vindication of his or her rights.[3]

Here, it is undisputed that CBS actually collected the data. There is no

---

[3]Indeed, accepting the Plaintiffs' argument, in this example a court would hold, under Ruehl, that an employer's omission in tendering OWBPA data would warrant the application of the equitable tolling doctrine because a jury could infer that the failure to tender such data was motivated by a plan to lull the employees into foregoing a prompt vindication of their rights, when the actual disclosure of the data would have revealed to the Plaintiffs that they had no actionable claims.

3

indication that the data collected was incomplete, false or misleading. Yet the Plaintiffs have not provided an analysis of the data or why the disclosure of such data would have alerted the Plaintiffs to pursue their rights.[4] Ruehl must be understood to mean that the mere fact of an omission is insufficient to serve as the basis of equitable tolling. As the Ruehl court suggested in the context of OWBPA data, a court must consider *what* the disclosures would have revealed in determining whether the failure to tender such data was part of an intentional plan to hide vital information from employees. Here there is simply no evidence of "what" the OWBPA data would have revealed.

The failure to analyze OWBPA data would not, in and of itself, be fatal to the Plaintiffs' case if they had adduced other evidence suggesting that CBS was attempting to "lull" them into foregoing a prompt vindication of their rights. Ruehl, 500 F.3d at 385. For instance, the Plaintiffs might have proffered evidence as to *why* the documentation was not provided. If such evidence had been proffered and gave rise to a reasonable inference that the OWBPA data had not been disclosed for some nefarious reason, then I would agree that the omission of such data could provide a basis for applying the equitable tolling doctrine. Again, however, no such evidence was made a part of the record. Further, the

---

[4] Though the Plaintiffs reference the "Mann Report" in the "pretext" section of their Brief, they make no mention of it in the "equitable tolling" section. They do not discuss it or argue that it shows that the OWBPA data, if disclosed, would have alerted the Plaintiffs that they had suffered age discrimination. Further, it appears that the Mann Report was based upon an analysis of something other than the OWBPA data that was compiled with respect to each Involuntary Separation Program. Its relevance in this regard then would be minimal. Finally, I have granted a Motion to Strike Plaintiffs' use of the Mann Report.

Plaintiffs elicited testimony that the "Separation Agreements" which the Plaintiffs entitled to OWBPA data signed referenced the existence of the OWBPA data. This would suggest that CBS was not attempting to "hide" vital information from its employees. Indeed, it told its employees in writing of the existence of the data. Further, there is nothing in the record to suggest that an employee ever asked for the data and was refused.

It may be that CBS simply failed to provide the documentation to each Plaintiff because of a misunderstanding of its statutory obligations. Perhaps it sought to avoid printing vast quantities of paper for employees who might never be inclined to review the materials. It may be that the documents were intended to be distributed but were not due to clerical error. At a time when cost cutting measures were being put into place, perhaps the failure to make individual copies of the OWBPA data was nothing more than a cost savings measure.

Simply stated, the Plaintiffs have not offered any evidence which would give rise to a reasonable inference that the failure to tender such data was part of a plan to hide vital information from its employees and to lull the Plaintiffs into sitting on their rights. See Summy-Long v. Pennsylvania State University, Civ. No. 6-1117, 2010 WL 1253472 at * 10 (M.D. Pa. March 24, 2010) (finding that an employer's tendering of data to an employee did not constitute "active misleading" even where such data included misinformation, where there was no indication that the employer had *"purposefully"* used improper data). There is no

5

suggestion that the data, if revealed, would have alerted the Plaintiffs as to the discriminatory nature of their discharge. Nor is there any other evidence that the failure to tender such data was done with any intent to hide vital information from the Plaintiffs.

In light of the Plaintiffs' failure to establish the applicability of the doctrine of equitable tolling, summary judgment must be granted in favor of the Defendant.

BY THE COURT:

/s/<u>Donetta W. Ambrose</u>
Donetta W. Ambrose,
U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Albright, John Brewer, Bobby Frisco, James Houstons, Marvin Poole, Paul Stadterman, Robert Todd, and Lynnette Williams | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 4-609 |
| Viacom, Inc., successor by merger to CBS Corporation, formerly known as Westinghouse Electric Corporation, | ) ) ) ) ) | |
| Defendant. | ) | |

AMBROSE, District Judge

## ORDER OF COURT

And now, this 24th day of June, 2010, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Defendant's Motion for Summary Judgment (Docket No. [106]) is GRANTED.

BY THE COURT:

/s/Donetta W. Ambrose
   Donetta W. Ambrose,
   U.S. District Judge